## Tesauro v. The Quigley Corporation

36

*Mark H. Edelson,* for plaintiffs.
*John P. McShea,* for defendant.

SHEPPARD JR., *J.,* August 14, 2002—This opinion addresses the proposed class notification procedure and forms of notice pertinent to this pending class action by named class representative plaintiffs, Jason Tesauro and Elizabeth Eley, against defendant, The Quigley Corporation. For the reasons discussed, the proposed notification procedures and proposed forms of notice submitted by both plaintiffs and defendant are disapproved, in part.

The parties are directed to redraft proposed notification procedures and forms of notice consistent with this opinion's instructions.

## BACKGROUND

The case background is set forth in the court's opinion granting plaintiffs' motion for certification as to the claims for breach of the implied warranty of merchantability and unjust enrichment, but not as to claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). *Tesauro v. The Quigley Corp.,* August Term, 2000, no. 1011 (C.P. Phila. Jan. 25, 2002).[1] Briefly, the class is designated as all persons who, between August 15, 1996 and November 20, 1999 (the class period), purchased defendant's Cold-Eeze zinc lozenges. *Id.* at ¶2. The certified claims are based on the assertion that defendant's Cold-Eeze product was not merchantable, malfunctioned in some manner or suffered from a defect and that defendant received an unlawful premium paid by consumers of Cold-Eeze.

The parties submitted similar proposed notices with certain differences as to the scope of the class, the opt-out provisions and the explanation of the nature of the claims. The parties also differ as to the notification procedures.[2] This opinion addresses both the inadequacies of the proposed forms of notice and the proper notification procedures.

---

1. Available at http://courts.phila.gov/cptcvcomp.htm. Other opinions, providing more background in this case, were issued on April 9, 2001, and July 9, 2002, and are also posted at the court's web site.

2. Neither plaintiffs' nor defendant's proposals were filed or docketed.

## DISCUSSION

### I. *Notification Procedures*

Rule 1712 of the Pennsylvania Rules of Civil Procedure sets forth the provisions for providing notice to members of a certified class. Specifically, subsection (a) of this Rule states, in pertinent part, that:

"In determining the type and content of notice to be used and the members to be notified, the court shall consider the extent and nature of the class, the relief requested, the cost of notifying the members and the possible prejudice to be suffered by members of the class or by other parties if notice is not received. The court may designate in the notice a person to answer inquiries from, furnish information to or receive comments from members or potential members of the class with respect to the notice. . . ." Pa.R.C.P. 1712(a).

Further, individual notice by personal service or by mail may be required where members can be identified with reasonable effort. Pa.R.C.P. 1712(b). The rule also provides that where members of the class cannot be identified with reasonable effort, "the court shall require notice to be given through methods reasonably calculated to inform members of the class of the pendency of the action." *Id.* These methods may include newspaper, television, radio or distribution through a trade, union or public interest group. *Id.* Further, pursuant to the rule, plaintiff bears the expense of providing notice to the class, though "[t]he court may require a defendant to cooperate in giving notice by taking steps which will minimize the plaintiff's expense including the use of the defendant's

established methods of communication with members of the class." Pa.R.C.P. 1712(c). Notwithstanding, plaintiff must pay any additional costs incurred by defendant in using its methods of communications in giving notice to members of the class. *Id.*

Here, plaintiffs propose a dual-track method of providing notice through publication to members of the class: (1) to post an appropriately worded notice on defendant's web site maintained at www.quigleyco.com; and (2) through print publication in a magazine or journal of prominent national circulation. Pls. proposed notification procedure, at 3-4. Defendant, in turn, asserts that use of its web site is not a proper notice method because there is no evidence that any class members who purchased Cold-Eeze and found it to be defective ever used defendant's web site, and the named plaintiffs had not seen the Internet "advertisements" alleged in the complaint. Def. proposed notification procedure, at 5. Rather, defendant contends that individual notice could be accomplished by the list maintained by defendant of the approximately 100 people who returned Cold-Eeze because they were dissatisfied. *Id.* at 6.

The cases relied upon by plaintiffs do not support publishing notice on defendant's web site. For instance, plaintiffs cite *Greer v. Shapiro & Kreisman,* 2001 WL 1632135 (E.D. Pa. Dec. 18, 2001), which allowed for individual notification by first-class mail to those members readily identifiable and additional notification by publication through print media outlets such that the publication is targeted at Pennsylvania residents determined to be a member of the class. 2001 WL 1632135, at *6. Other cases cited by plaintiffs support publication of the no-

tice to potential class members via the Internet, but none of these cases require notice to be placed on defendant's web site. See *In re Aetna Inc.,* 2001 WL 20928, \*5 (E.D. Pa. Jan. 4, 2001) (class notice sent to identifiable individuals and companies, coupled with summary notice in the national edition of the *Wall Street Journal* and on the Internet through the Business Wire deemed appropriate means to meet due process); *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 472 (E.D. Pa. 2000) (holding that individual notice via first-class mail, together with newspaper and Internet publication will satisfy the notice requirement of Fed.R.C.P. 23.); *In re California Micro Devices Corp. Securities Litig,* 2001 WL 765146, \*1 (N.D. Cal. June 4, 2001) (notice through individual mailings, the *Wall Street Journal* and broadcast to the Internet).

Moreover, plaintiffs' proposed publication of notice on defendant's web site may be targeting shareholders to achieve a negative reaction or to otherwise prejudice defendant, rather than to provide notice to class members. It is true that there is a link on defendant's home page at www.quigleyco.com, relating "where to buy Cold-Eeze," but there is no concrete evidence that any potential member of the class bought Cold-Eeze through the defendant's web site. Absent such evidence, the potential prejudice to defendant outweighs plaintiffs' desire to minimize the expense of sending notice through defendant's established methods of communication as provided in Pa.R.C.P. 1712(c).

Further, individual notice through first-class mail could be accomplished as to the list of people maintained by defendant who were dissatisfied with Cold-Eeze. As to

other members of the class, notice could be accomplished through publication in a national journal or magazine and through publication over a news service on the Internet. In accord with Pa.R.C.P. 1712(c), plaintiffs must bear the expense for providing notice to other class members whether through individual notice or through news services or other media.

In addition, the court does not find persuasive defendant's contention that notification by national print publication is unwarranted. The class, as defined by the order of January 25, 2002, includes all purchases of Cold-Eeze through the class period, which implicitly includes both residents and nonresidents of Pennsylvania. The court is empowered to certify nationwide classes provided that residents and nonresidents of the forum state receive notice which complies with the requisite constitutional due process. See *Phillips Petroleum v. Shutts,* 472 U.S. 797, 811-12 (1985) (setting forth the constitutional boundaries for nonresident notification and allowing an "opt-out" procedure as to absent plaintiffs who were otherwise members of the class); *Parsky v. First Union Corp.,* February term 2000, no. 771, slip op. at 5-7 (C.P. Phila. August 17, 2001) (applying *Shutts* and allowing for an "opt out" procedure for nonresident class members where Pennsylvania has the most significant relationship to the action).[3] Here, notice by publication through national print media or over the Internet would meet the requirements of due process provided the form of notice was properly worded.

---

3. Opinion is available at http://courts.phila.gov/cptcvcomp.htm.

## II. *Form of Notice*

In addition to the mandates set forth in Rule 1712, our Superior Court states that:

"Notice in a class suit must present a fair recital of the subject matter and proposed terms and inform the class members of an opportunity to be heard. . . . It 'may consist of a very general description of the proposed settlement, including a summary of the monetary or other benefits that the class would receive and an estimation of attorneys' fees and other expenses.' . . . The notice need not provide a complete source of settlement information, and class members are not expected to rely upon the notices as such." *Fischer v. Madway,* 336 Pa. Super. 289, 293-94, 485 A.2d 809, 811 (1984). (citations omitted)

Here, both plaintiffs and defendant submitted proposed forms of notice which were in a single paragraph form. In accord with Rule 1712(a), both forms of notice designate to whom inquires may be made and give a cursory explanation of the nature of the class action. Both proposals also include one to two sentences on "opt-out" provisions. The main differences between defendant's proposed form and plaintiffs' proposed form are that defendant limits the membership of the class to Pennsylvania residents, defendant limits the members of the class to those individuals which found that the product malfunctioned or suffered a defect and defendant qualifies the "opt-out" procedures in a different manner from plaintiffs.

In examining both proposed forms of notice, the court finds them inadequate and vague. It is true, as proposed by defendant, that the notice should explain the nature of the claim in a more detailed manner, *i.e.,* to relate that

members of the class would include those purchasers of Cold-Eeze who suffered from a defect or that the product did not work as warranted or was not merchantable. However, neither proposed form sufficiently sets forth the nature of the claim. Also, the opt-out procedures have to explain more fully the consequences of failure to opt-out of the class, *i.e.,* that failure to opt-out of the class would limit any recovery to that achieved by the class and bar any individual action. The notice should also clarify the timing for the operation of the opt-out procedures. Moreover, the form of notice would be clearer if it had enumerated paragraphs with subheadings to address each topic, *i.e.,* the nature of the claim, identification of the class members, the opt-out procedures, who to contact for inquires, how to raise objections, timing for making such objections, the court's class action ruling, future proceedings, etc. Absent these changes, the court does not deem the proposed notice to class members sufficient to meet the requirements of Rule 1712.

## CONCLUSION

For these reasons, this court is issuing a contemporaneous order denying approval of the proposed form of notice and denying plaintiffs' request to publish notice on defendant's web site. The court also directs both parties to submit new forms of notice consistent with the instructions discussed.

## ORDER

And now, August 14, 2002, upon consideration of plaintiffs' proposed form of notice and notification pro-

44

cedures to members in this pending class action, defendant's proposed form of notice and notification procedures to class members, all other matters of record and in accord with the opinion being filed contemporaneously with this order, it is ordered that the proposed notification procedures and proposed forms of notice are disapproved, in part. The plaintiffs' request to publish on defendant's web site is denied. The parties are further ordered to submit new forms of notice to be consistent with the court's instructions within 22 days of this order.